**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| REGIONS BANK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 2:05-CV-0100-RWS |
| METAMORPHIX, INC., | : | |
| WILLIAM E. CARLSON, | : | |
| SHAPIRO, SHER, GUINOT & | : | |
| SANDLER, and JOHN | : | |
| CLEVELAND, | : | |
| | : | |
| Defendants. | : | |

### <u>ORDER</u>

Now before the Court are Plaintiff's Motion to Remand [12-1];

Defendants' Motion to Dismiss by William E. Carlson and Shapiro, Sher,

Guinot & Sandler for Lack of Personal Jurisdiction [13]; and Defendants'

Motion for Hearing [14]. After considering the entire record, the Court enters

the following Order.

**Background**

This case arises out of a dispute over collateral pledged as security for a series of loan transactions involving Plaintiff, Defendant John Cleveland, and Samuel R. Dunlap, Jr., a debtor in bankruptcy and not a party to this action. Plaintiff alleges that beginning in 1999, Dunlap advised Defendant MetaMorphix, Inc. ("MMI") with respect to sourcing and placement of debt securities and/or structured finance, and in return, was appointed to the MMI Board of Directors and issued a warrant to purchase 560,000 shares of MMI stock. At Dunlap's request, this warrant was subsequently divided into six separate warrants numbered as follows: W-203A, (100,000 shares), W-203B (100,000 shares), W-203C (100,000 shares), W-203D, (100,000 shares), W-203E (100,000 shares), and W-203F (60,000 shares).

Between March 2000 and May 2002, Plaintiff and Dunlap entered into a series of personal loans which were secured, in part, by Dunlap's pledge of Warrant Nos. W-203A through W-203E as collateral and eventually consolidated on March 25, 2002. In connection with one of the consolidated loans, Dunlap executed an "Instruction to Issuer to Register Pledge" for each stock warrant. These instructions requested that the pledge of each warrant as

2

security to Plaintiff be registered on the MMI share ledger; provided that Plaintiff was entitled to all rights as a secured creditor; and specified that it retained such status until such time as Plaintiff notified MMI of the release of the pledged warrants.  The instructions were sent to MMI along with a separate cover letter requesting that MMI register the pledge of the warrants and acknowledge that registration by counter-signing the letter and returning it to Plaintiff.  MMI forwarded the instructions and cover letter to Defendant William Carlson, a partner in the law firm of Defendant Shapiro, Sher, Guinot & Sandler (the "Shapiro Firm") who acted as MMI's transfer agent and maintained its share ledger.  Defendant Carlson registered Dunlap's pledge of the warrants on the MMI share ledger and, in October 2000, MMI returned the counter-signed letter acknowledging such registration to Plaintiff.

In June 2001, apparently unbeknownst to Plaintiff, Dunlap borrowed funds from Cleveland and pledged as collateral some stock to come from Warrant W-203E--the same warrant which was previously pledged to Plaintiff. Dunlap subsequently contacted MMI and requested that the W-203E Warrant be reissued in the form of new warrants in denominations which corresponded to the pledge to Cleveland.  Plaintiff alleges that Defendants MMI, Carlson, and

3

the Shapiro Firm wrongfully accepted the W-203E Warrant, reissued Warrant

Nos. W-203G (25,000 shares) and W-203H (20,000 shares) without any

restrictive legend or notation that these newly issued warrants were subject to

Plaintiff's security interest, and transferred the reissued W-203G and W-203H

Warrants to Cleveland.  Defendants Carlson and the Shapiro Firm dispute this

allegation and have submitted an affidavit stating that they had no knowledge of

the pledge to Cleveland, and that with the exception of 6,000 shares of MMI

stock issued to Cleveland pursuant to Dunlap's request, all reissued warrants

were transferred to Dunlap.

On June 17, 2005, Plaintiff filed suit in the Superior Court of Hall County,

Georgia.  Plaintiff asserted, inter alia, claims for conversion, breach of duty,

negligence, and negligent misrepresentation against MMI, Carlson, and the

Shapiro Firm, as well as a breach of contract claim against MMI.  Importantly,

for purposes of the instant motion, Plaintiff also sought declaratory relief against

Cleveland with respect to its rights and relative priorities in the W-203G and W-

203H Warrants.  On July 14, 2005, Defendants Carlson and the Shapiro Firm,

with the consent of MMI, filed a Notice of Removal in this District (collectively

the "Removing Defendants").  Defendant Cleveland does not consent to the

4

removal of this action.  Plaintiff now seeks remand of the action to the state court.

## Discussion

### I.  Motion to Remand

Unless Congress explicitly provides otherwise, a defendant may remove to federal court a civil action brought in state court, provided that the federal court has original jurisdiction over the action.  28 U.S.C. § 1441(a)-(b).  Original jurisdiction may be based on a federal question or on diversity of citizenship. 28 U.S.C. §§ 1331-1332.

Where the court's removal jurisdiction is predicated on diversity of citizenship, several constraints on the exercise of jurisdiction exist.  First, complete diversity is required.  That is to say, every plaintiff must be diverse from every defendant.  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).  Second, even where there is complete diversity, removal jurisdiction is expressly proscribed in cases where a properly joined and served defendant is a citizen of the state where the action was originally brought.  28 U.S.C. § 1441(b) ("Any other action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the

5

State in which such action is brought."); see Caterpillar Inc. v. Lewis,  519 U.S.

61, 68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996) (when a plaintiff files in state

court a civil action over which the federal district courts would have original

jurisdiction based on diversity of citizenship, the defendant may remove the

action to federal court, provided that no defendant is a citizen of the State in

which such action is brought).

The party seeking removal bears the burden of establishing federal

jurisdiction.  Friedman v. New York Life Ins. Co, 410 F.3d 1350, 1353 (11th

Cir. 2005).  Removal statutes should be construed narrowly with any doubt

resolved in favor of remand.  Allen v. Christenberry, 327 F.3d 1290, 1293 (11th

Cir. 2003); Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996); see also

Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("Defendant's

right to remove and plaintiff's right to choose his forum are not on equal

footing; . . . removal statutes are construed narrowly; where plaintiff and

defendant clash about jurisdiction, uncertainties are resolved in favor of

remand.").  Sound reasons exist for so limiting the exercise of removal

jurisdiction.  Initially, the removal of causes to federal courts implicates

principles of federalism.  As the Supreme Court has explained:

> The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."

Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109, 61 S. Ct. 868, 85 L. Ed. 1214 (1941) (quoting Healy v. Ratta, 292 U.S. 263, 270, 54 S. Ct. 700, 78 L. Ed. 1248 (1934)).  What is more, resolving any doubt in favor of remand "prevents exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal, a result that is costly not just for the plaintiff, but for all the parties and for society when the case must be relitigated."  Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (internal quotations omitted).

A plaintiff is the master of his own complaint.  As such, he remains free to join such claims or parties in a single action as are permitted under the law and the Federal Rules of Civil Procedure.  The same is no less true where a plaintiff's decision to join a non-diverse or forum-resident party may have repercussions for purposes of removal jurisdiction.  Garbie v. DaimlerChrysler Corp., 211 F.3d 407, 410 (7th Cir. 2000) ("Even if the [non-diverse parties]

7

were added to prevent removal, that is their privilege; plaintiffs as masters of the

complaint may include (or omit) claims or parties in order to determine the

forum."); Triggs, 154 F.3d at 1288-91 (finding permissive joinder of non-

diverse, forum-resident defendant under Rule 20 sufficient to defeat removal

jurisdiction and ordering that case be remanded to state court); Boyer v. Snap-

on Tools Corp., 913 F.2d 108, 110 (3d Cir. 1990) ("[P]laintiffs have the option

of naming those parties whom they choose to sue, subject only to the rules of

joinder of necessary parties.  While the plaintiffs' decision in this regard may

have repercussions for purposes of diversity jurisdiction, there is no reason for

a court to interfere with this inevitable consequence of a plaintiff's election

unless the plaintiff had impermissibly manufactured diversity or used an

unacceptable device to defeat diversity.").

The aforementioned rule, however, is not without exception.  A

defendant's statutory "right of removal cannot be defeated by a fraudulent

joinder of a resident defendant having no real connection with the controversy."

Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 66 L. Ed.

144 (1921).  Thus, courts have established the doctrine of fraudulent joinder to

allow the removal of a case to federal court despite the presence of a non-

diverse or forum-resident defendant.  The Eleventh Circuit has identified three

situations in which fraudulent joinder may be applicable.

> The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. [cits.] The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. [cit.] [The third] is where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.

Triggs, 154 F.3d at 1287.  With respect to this third category of cases, the

Eleventh Circuit expressly "d[id] not hold that mere misjoinder is fraudulent

joinder," but rather agreed with the district court that, in certain circumstances,

misjoinder may be "so egregious as to constitute fraudulent joinder."  Tapscott

v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996), overruled on

other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000).

"The burden of establishing fraudulent joinder is a heavy one." Pacheco de

Perez v. AT & T Co., 139 F.3d 1368, 1380 (11th Cir. 1998).  "The

determination of whether a resident defendant has been fraudulently joined must

be based upon the plaintiff's pleadings at the time of removal, supplemented by

any affidavits and deposition transcripts submitted by the parties.  In making its

determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." Id.

### A. Cleveland's lack of consent and nominal party status

Removing Defendants have raised different issues related to the propriety of removal in the Notice of Removal and in their responsive papers. The Court addresses first those grounds for removal jurisdiction actually reflected on the face of the Notice of Removal.

### 1. Consent of all defendants

Section 1446(a) has been interpreted to require that all defendants join in the removal petition. Hernandez v. Seminole County, 334 F.3d 1233, 1237 (11th Cir. 2003); see Russell Corp. v. Am. Home Assur. Co., 264 F.3d 1040, 1044 (11th Cir. 2001). Here, Cleveland does not consent to removal. Nevertheless, Removing Defendants state in their Notice of Removal that Cleveland's refusal to consent can be ignored because Cleveland had not been served with process at the time of filing. It is now undisputed, however, that Cleveland had waived service on July 12, 2005--two days prior to the filing of the Notice of Removal. As such, unless there is another reason to disregard

Cleveland for jurisdictional purposes, the action must be remanded.

2.  Cleveland's status as a nominal or formal party

"Generally, for removal to be proper, all named defendants must join in the removal petition."  Zerafa v. Montefiore Hosp. Hous. Co., ___ F. Supp. 2d ___, 2005 WL 3358467, *5 (S.D.N.Y. Dec. 7, 2005).  "This requirement is known as 'the rule of unanimity,' and it 'advances the congressional purpose of giving deference to a plaintiff's choice of a state forum and of resolving doubts against removal in favor of remand.' "  Id. (quoting Miller v. First Sec. Invs., Inc., 30 F. Supp. 2d 347, 350 (E.D.N.Y. 1998)).  An exception to the rule of unanimity exists, however, in that a mere formal or nominal party may be disregarded for jurisdictional purposes.  Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349, 427 F.2d 325, 327 (5th Cir. 1970).[1]

"The test of whether or not a named defendant is a nominal party is if his role in the law suit is that of a depositary or stakeholder."  Id. (internal quotations omitted).  Removing Defendants contend that Cleveland is such a

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit precedent handed down prior to the close of business on September 30, 1981.

11

party.  The Court disagrees.  While it may be of no moment to Cleveland

whether Plaintiff's tort and contract claims against Removing Defendants are

successful, Removing Defendants' argument wholly ignores the fact that

Plaintiff also seeks a declaratory judgment as to Cleveland's priority interest in

securities in which he has a personal interest.  Thus, as to the declaratory

judgment claim, Cleveland is not a disinterested depositary, but rather an

interested defendant permissively joined in this action pursuant to Rule 20.  As

discussed above, joining Cleveland in this action is Plaintiff's prerogative and

his presence may preclude removal. Thus, unless that joinder is clearly

fraudulent, remand is appropriate.

### B.  Fraudulent Joinder

The Court turns now to the issue of fraudulent joinder raised for the first

time in Removing Defendants' responsive papers.  The law with respect to

fraudulent joinder is clear beyond dispute: "A claim of fraudulent joinder must

be pleaded with particularity, and supported by clear and convincing evidence."

Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962); see also,

e.g., McLeod v. Cities Service Gas Co., 233 F.2d 242, 246 (10th Cir. 1954)

("fraudulent joinder, like any other allegation of fraud, must be pleaded with

particularity and proven with certainty.  It cannot be inferred from a mere

misjoinder of parties or causes of action."); Bertrand v. Aventis Pasteur Labs.,

Inc, 226 F. Supp. 2d 1206, 1212 (D. Ariz. 2002) ("A claim of fraudulent joinder

must be pled with particularity and supported by clear and convincing

evidence."); Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47

(D.N.M. 1999) ("To justify removal based on diversity jurisdiction, a defendant

must plead a claim of fraudulent joinder with particularity and prove the claim

with certainty."); Everett v. MTD Products, Inc., 947 F. Supp. 441, 444-45

(N.D. Ala. 1996) ("A defendant has a high burden in establishing fraudulent

joinder--it must present evidence that compels the conclusion that the joinder is

without right and made in bad faith.  A defendant must assert with particularity

that a joinder is fraudulent and support the claim by clear and convincing

evidence.") (internal quotations omitted); Parker v. Crete Carrier Corp., 914 F.

Supp. 156, 159 (E.D. Ky. 1996) ("Claims of fraudulent joinder must be asserted

with particularity and supported by clear and convincing evidence."); Nat. Union

Fire Ins. Co. of Pittsburgh v. Lib. Mut. Ins. Co., 878 F. Supp. 199, 202 (M.D.

Ala. 1995) (same); Lane v. Champion Intern. Corp., 827 F. Supp. 701, 706

(S.D. Ala. 1993) (same); Coley v. Dragon Ltd., 138 F.R.D. 460, 466 (E.D. Va.

1990) ("Fraudulent joinder must be alleged with particularity and proved by clear and convincing evidence consisting of facts rightly leading to that conclusion, apart from the deductions of the pleader.").

In this regard, Removing Defendants' Notice of Removal is plainly insufficient.  Although Removing Defendants point out in their Notice of Removal that the relief sought against Cleveland is different from that sought against them, (see Notice of Removal ¶¶ 11-12), they neither explain the significance of this fact nor so much as mention that Cleveland has been fraudulently joined in an attempt to defeat removal jurisdiction.  Additionally, although Removing Defendants state that Cleveland is "not a necessary or indispensable party to the claims asserted against them," (Id. ¶ 18), they do so not in the context of a claim that a forum-resident defendant has been fraudulently joined, but rather in explaining why Cleveland's lack of consent to removal may be ignored.  (See Id. ¶ 19 ("Although Defendant Cleveland does not consent to removal of this action, his consent is not required insofar as he is not a necessary or indispensable party to the claims asserted against the Removing Defendants and MMI.").)  Without question, this does not constitute "pleading with particularity" sufficient to meet Removing Defendants' "heavy

14

burden" of establishing federal jurisdiction, and as such, the Court is not inclined to consider Removing Defendants' allegations of fraudulent joinder raised for the first time in their Response to Plaintiff's Motion to Remand.

Furthermore, even looking past the facial deficiencies of the Notice of Removal, the Court has grave concerns as to whether they have carried their burden and established that the exercise of federal jurisdiction is appropriate. Federal Rule of Civil Procedure 20 provides for the permissive joinder of parties and claims in civil actions. Joinder of defendants under Rule 20 requires only that (1) the plaintiff assert a claim for relief seeking joint, several, or alternative liability which arises from the same transaction, occurrence, or series of logically related transactions or occurrences; and (2) the claim against the joined defendants involves a common question of law or fact. FED. R. CIV. P. 20(a); Triggs, 154 F.3d at 1288. "[T]he central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." Alexander v. Fulton County, 207 F.3d 1303, 1323 (11th Cir. 2000). "The Supreme Court has instructed the lower courts to employ a liberal approach to permissive joinder of claims and parties in the interest of judicial economy: 'Under the Rules, the impulse is towards entertaining the

broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.' " <u>Id.</u> (quoting <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)).

In view of the liberal standard of permissive joinder, the Court cannot say with sufficient certainty that Cleveland is not properly joined under Rule 20. Moreover, even if the joinder of Cleveland is improper under Rule 20, the Court cannot say that his joinder is so egregious as to be fraudulent. <u>Tapscott</u>, 77 F.3d at 1360. As such, the Court must conclude that Removing Defendants have failed to satisfy their "heavy burden" of convincing the Court that it has subject matter jurisdiction over the action. "Over and over again," the Eleventh Circuit has "stress[ed] that the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." <u>Crowe</u>, 113 F.3d at 1538. Thus, when considered in light of the clear policy favoring remand, even in those cases where jurisdiction may be questionable, the Court concludes that remand of the action is appropriate. Quite simply, the Court is not inclined to retain jurisdiction and face the unfortunate and costly possibility that Plaintiff would proceed to judgment in federal court only to discover on

appeal that this Court lacked subject matter jurisdiction over the removed action. Id.  Accordingly, for the reasons set forth herein, Plaintiff's Motion to Remand is hereby **GRANTED**.

### C. Severance

Removing Defendants do not style their papers as a motion for severance.  Nevertheless, a discussion of severance and a request for the same does appear in Removing Defendants' responsive brief.  Thus, insofar as Removing Defendants seek severance of Plaintiff's action against Cleveland, the Court takes this opportunity to make clear that severance under Rule 21 is not appropriate.  A non-diverse or forum-resident defendant joined under Rule 20 precludes removal to federal court.  See 28 U.S.C. § 1446(b); Triggs, 154 F.3d at 1288; Garbie, 211 F.3d at 410; Boyer, 913 F.2d at 110.  To sever those claims against a defendant joined under Rule 20 would not only do violence to that most basic concept that a plaintiff is the master of his own complaint, but also prejudice Plaintiff by forcing it to maintain separate actions when not required to do so under the law and Rules governing removal.  Therefore, the Court declines to sever the claims against Removing Defendants and Cleveland pursuant to Rule 21.  See Ferry v. Bekum Am. Corp., 185 F. Supp. 2d 1285,

1291-92 (M.D. Fla. 2002) (rejecting severance of party joined under Rule 20 where joinder was "not so egregious as to be fraudulent"); <u>id.</u> ("Until and unless a situation arises in which there exists complete diversity of citizenship, this court may not sever claims, it may not dismiss parties, it may do nothing but remand this action. . . .") (quoting <u>Perry v. Norwest Fin. Ala., Inc.</u>, 1998 WL 964987, *3 (S.D. Ala. 1998)).

### D.  Request for Attorney's Fees

Plaintiff requests that this Court impose costs and fees upon Removing Defendants pursuant to 28 U.S.C. § 1447(c) which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal."   The purpose of § 1447(c) is not to punish defendants for improper removal, but to compensate plaintiffs for expenses associated with obtaining a remand order.  <u>Publix Supermarkets, Inc. v. United Food & Commercial Workers Int'l Union AFL-CIO & CLC</u>, 900 F. Supp. 419, 422 (M.D. Fla. 1995).  Thus, attorney's fees may be awarded even in the absence of a showing of bad faith.  <u>Id.</u> at 421; <u>see Graham Commercial Realty, Inc. v. Shamsi</u>, 75 F. Supp. 2d 1371, 1373 (N.D. Ga. 1998) ("A finding of bad faith or improper purpose by the removing

18

party is not necessary.").  "An award of attorneys' fees is solely in the

discretion of the court."  <u>Graham</u>, 75 F. Supp. 2d at 1373; <u>Gray v. N.Y. Life

Ins. Co.</u>, 906 F. Supp. 628, 631 (N.D. Ala. 1995); <u>see also</u> <u>Hobbs v. Blue

Cross Blue Shield of Ala.</u>, 276 F.3d 1236, 1243 (11th Cir. 2001) (reviewing

denial of costs and fees for abuse of discretion).

That said, the exercise of the Court's discretion is not unfettered.  In

<u>Martin v. Franklin Capital Corp.</u>, ___ U.S. ___, 126 S. Ct. 704, 163 L. Ed. 2d

547 (2005), the Supreme Court recently provided significant guidance in the

award of attorney's fees under § 1447(c).  In <u>Martin</u>, the Supreme Court

recognized that statutory language and context of that subsection evidences

neither an intent by Congress to favor or disfavor the award of fees, and as

such, saw "nothing to persuade [it] that fees under § 1447(c) should either

usually be granted or usually be denied."  <u>Id.</u> at 710.  Rather, courts must

address a request for fees in light of the policies motivating Congress'

authorization of such an award.  As the <u>Martin</u> Court recognized, "[b]y enacting

the removal statute, Congress granted a right to a federal forum to a limited class

of state-court defendants.  If fee shifting were automatic, defendants might

choose to exercise this right only in cases where the right to remove was

obvious." <u>Id.</u> at 711.  At the same time, however,

> [t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff.

<u>Id.</u>  In view of these competing principles, the Court stated:

> The appropriate test for awarding fees under § 1447(c) should recognize Congress' desire to deter removals intended to prolong litigation and impose costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied. In light of these "large objectives," the standard for awarding fees should turn on the reasonableness of the removal.  In applying the general rule of reasonableness, district courts retain discretion to consider whether unusual circumstances warrant a departure in a given case. A court's reasons for departing, however, should be "faithful to the purposes" of awarding fees under § 1447(c).

> In light of these "large objectives," [cit.] the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. [cits.]  In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.

<u>Id.</u>

Applying this standard, the Court finds an award of reasonable attorney's fees and costs appropriate.  Had Removing Defendants squarely asserted fraudulent joinder in their Notice of Removal and supported that assertion with appropriate evidence, it would be difficult for the Court to conclude that they lacked an objectively reasonable basis for removal.  But, Removing Defendants did not proceed in this manner.  Rather, despite overwhelming and binding authority which clearly holds that "fraudulent joinder must be pleaded with particularity, and supported by clear and convincing evidence," e.g., Parks v. New York Times Co., 308 F.2d at 478; Everett v. MTD Products, Inc., 947 F. Supp. at 444-45, and notwithstanding Removing Defendants' assertion that their "right to seek removal was carefully researched prior to filing the Notice [of Removal]," (see Mot. to Remand Ex. E [12-3] at 2), Removing Defendants have raised the issue of fraudulent joinder for the first time in response to Plaintiff's Motion to Remand.  Thus, Removing Defendants have, in essence, abandoned their initial grounds for removal in favor of new ones raised for the first time in their responsive papers.[2]  This has caused Plaintiff to unnecessarily incur

---

[2] Moreover, the Court notes that, inasmuch as Removing Defendants have attempted to invoke federal jurisdiction based on the fact that Cleveland was not served with process, Removing Defendants were made aware that Cleveland had waived service prior to their

additional expenses by forcing it to respond to arguments not apparent on the face of the removal petition, and thus, not addressed in Plaintiff's Motion to Remand. Therefore, on the facts of this case, the Court concludes that removal of this action was not objectively reasonable. As such, Removing Defendants shall be required to bear the costs and Plaintiff's reasonable attorney's fees associated with this Motion to Remand. Plaintiff shall file an itemized statement of those attorney's fees and costs sought within five (5) days of the entry of this Order. Removing Defendants shall have five (5) days thereafter within which to file objections thereto.

## Conclusion

Plaintiff's Motion to Remand [12-1] is hereby **GRANTED** and this action shall be **REMANDED** to the Superior Court of Hall County, Georgia. Defendants shall be required to bear the costs and Plaintiff's reasonable attorney's fees associated with the Motion to Remand. Defendants' Motion to

---

filing their removal petition and nevertheless refused Plaintiff's request that they consent to remand. While Removing Defendants may not have an affirmative obligation to contact other parties and determine the status of service upon them, the Court finds their refusal to consent to remand and their decision to rely instead on the belated assertion of fraudulent joinder under Rule 20 relevant to the determination of whether Removing Defendants in fact had an objectively reasonable, good faith basis for seeking removal.

Dismiss by William E. Carlson and Shapiro, Sher, Guinot & Sandler for Lack

of Personal Jurisdiction [13] is **DENIED AS MOOT**; and Defendants' Motion

for Hearing [14] is **DENIED AS MOOT**.

 

     **SO ORDERED** this __31st__ day of January, 2006.

 

               /s/ Richard W. Story
               RICHARD W. STORY
               UNITED STATES DISTRICT JUDGE

23